UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

XDESIGN, LLC,

        Plaintiff,

  v.

MECCA11, LLC,

        Defendant.

C17-1744 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) The Court has scheduled oral argument for Friday, June 21, 2019, on defendant's motion for partial summary judgment, docket no. 25, and plaintiff's cross-motion for summary judgment, docket no. 26, dismissing all counterclaims of defendant. Counsel shall be prepared to address at oral argument whether the Court may, sua sponte, enter summary judgment for a non-moving party on any issue presented by the pending motions. Specifically, the Court will consider ruling as follow on the pending motions:

    (a) That plaintiff's motion for summary judgment, docket no. 26, should be granted and that all defendant's counterclaims should be dismissed with prejudice.

    (b) That the August 24, 2017, Purchase Order was a legally binding contract for the purchase of raw materials only for 4,000 frames for a purchase price of $122,840. *See* Parnell Decl. Ex. H (docket no. 27). It was solely for raw materials until plaintiff signed off on production which never occurred. *See* Vierthaler Decl. Ex. A (e-mails) (docket no. 28). The Purchase Order required a 50% deposit to start production. *See* Parnell Decl. Ex. I (docket no. 27). It is undisputed that no pack frames were ever manufactured. *See* Stahl Decl., docket no. 29 (Taylor Dep. at 223). Regardless of the interpretation of the contract, it

MINUTE ORDER - 1

appears that defendant repudiated the purchase order.  Between August 24, 2017 and September 2, 2017 the parties exchanged a string of e-mails discussing the Purchase Order.  Parnell Decl. ¶ 16 and Ex. J (docket no. 27).  *See also* Vierthaler Decl., docket no. 28, ¶ 5 and Ex. A (e-mails).  Nothing in these discussions or e-mails constituted a repudiation of the Purchase Order by plaintiff.  *See* <u>Alaska Pacific Trading Co. v. Eagon Forest Products, Inc.,</u> 85 Wn. App. 354 (1997). However, defendant repudiated the August 24, 2017, contract on September 13, 2017, by sending by e-mail a revised version of the Purchase Order.  *See* Parnell Decl. Ex. K (docket no. 27).  The September 13, 2017, e-mail advised plaintiff that it was not obligated to proceed with production under the original Purchase Order and the September 13 e-mail constituted a clear and positive statement or action that expressed defendant's intent not to perform on the Purchase Order.  It is undisputed that it was defendant's intention that neither party had any obligation to do any business with the other unless agreement could be reached on a revised purchase order.  *See* Stahl Decl. (docket no. 29) Ex. A, Taylor Dep. at 280-285. The action of defendant constituted a repudiation of the Purchase Order agreement as a matter of law.  As a result, defendant's motion to dismiss plaintiff's breach of contract claim should be denied; correspondingly, the Court should sua sponte grant summary judgment on the contract claim on liability in favor of plaintiff.

      (c)     That defendant has breached the April 20, 2017 tooling quote by wrongfully demanding a $22,000 "transfer fee" as a condition of its release of the tooling to plaintiff.  Vierthaler Decl., docket no. 28, ¶ 3.  Defendant is <u>not</u> entitled to a $22,000 transfer fee as a condition of releasing the tooling to plaintiff.  It is undisputed that the terms of the tooling quotes did not reference a transfer fee and Mr. Taylor concedes the tooling quote contains all the terms of the agreement, and that he was unaware of the fee at the time of the quote.  Stahl Decl. (docket no. 29), Taylor Dep. at 290.  At his deposition, Mr. Taylor asserted the term "Price: Ex Works" refers to a transfer fee.  The Court finds this after-the-fact suggestion without merit and does not present a genuine issue of fact.  As indicated in the International Chamber of Commerce Incoterms® Rules 2010, "Ex Works" is simply a well-known delivery term defined as follows:

> "Ex Works" means that the seller delivers when it places the goods at the disposal of the buyer at the seller's premises or at another named place (i.e., works, factory, warehouse, etc.). The seller does not need to load the goods on any collecting vehicle, nor does it need to clear the goods for export, where such clearance is applicable.

*See* Stahl Decl. Ex. A at 155, 290 (docket no. 29-1 at 61, 119).  Defendant's demand for a transfer fee should be denied and plaintiff should be entitled to judgment for a release of the tooling to plaintiff.

(d)     That plaintiff's second cause of action for fraudulent inducement may present factual issues.  However, the allegations of a 5%-10% markup depending on the complexity of the project on production costs was too uncertain to support a claim by clear and convincing evidence for fraud under Washington law.  *See* Parnell Decl. at ¶ 5 (docket no. 27).  The parties later signed a statement of work that does not refer to markup.  *See* Parnell Decl. Ex. B (docket no. 27-2).  This claim should be dismissed.

(e)     That plaintiff's fifth claim for CPA violations should be dismissed because "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 790 (1986).

(f)     That only plaintiff's fourth claim for breach of design contract should proceed to trial, together with trial on damages, if any, under the Purchase Order.

(2)     The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 17th day of June, 2019.

> William M. McCool
> Clerk
>
> s/Karen Dews
> Deputy Clerk